Cook v. Lanning.

---

AZARIAH R. COOK et al., executors &c.,

*v.*

GEORGE W. LANNING et al.

1. A testator gave to A. a legacy, the interest of which was to be paid to A.'s father during his lifetime. A., who was not one of testator's descendants, died before the testator.—*Held*, that the legacy lapsed, and that the lapse destroyed any claim for interest on the legacy by A.'s father, who survived both A. and the testator.

2. By a legacy to Sarah, daughter of Elizabeth Waters, testator was held to have meant Sarah, daughter of Elizabeth Wasson, his great-niece.

♦ 3. After a specific devise and several legacies, a testator provided : " It is, my will that none of these legacies be paid until after the death of my brother G. and his wife E., and after their death *the balance of my estate, if any,* to be equally divided between A, B, C, D and F." The testator's debts exceed his personal estate, while the real estate, outside of the specific devise, largely exceeds in value the balance due on the debts after applying the personal estate thereto.

*Held*, that the legacies were a charge on the land ; that all the lands were devised, and that the executors must sell them to pay the debts and legacies, and invest the surplus and hold it during G.'s lifetime (E. having died meanwhile), and after G.'s death divide it among A, B, C, D and F.

---

Bill for construction of will. On final hearing on pleadings and proofs.

*Mr. W. M. Lanning*, for complainants.

24

*Mr. E. T. Green*, for George W. Lanning.

*Mr. G. D. W. Vroom*, for Sarah E. White, Rebecca A. Winder and Ralph C. Lanning.

THE CHANCELLOR.

Theodore Lanning, deceased, late of Mercer county, died December 28th, 1884. By his will, dated February 24th, in the same year, after ordering that his debts and funeral expenses be paid, and that grave-stones be placed at his grave and an iron fence around the graves of his father and mother and himself, he gave to his brother, George W. Lanning, an annuity of $140 for life, and to the wife of the latter a life annuity of $80. He then gave two pecuniary legacies; to John W. and William Lanning he gave the "notes of hand" which he held against them. He then made several bequests of sums of money to different persons. To Theodore L. Jones he then gave a house and lot and a wood-lot, and then gave several legacies of sums of money to different persons and specific legacies to two of them. Then follows this provision:

"It is my will that none of these legacies *to* be paid until after the death of

NOTE.—In *Green* v. *Howell, 1 Vr. 326, 2 Vr. 570*, a testator gave to his sister M. the interest of $1,000 for life, and thereafter the $1,000 to M.'s two daughters, D. and S., equally to be divided. S. died in the testator's lifetime, while D. survived the testator but died before M.—*Held*, that D.'s administrator could recover a moiety of the $1,000 because her interest vested at testator's death, but (*per Green, C., 2 Vr. 572*) S.'s interest lapsed by her death before testator; see *Drummond* v. *Drummond, 11 C. E. Gr. 234.* The remainderman's interest would be vested if he survived the testator but died before the life-tenant, *2 Wms. on Exrs.* (*6th Am. ed.*) *1340*, [*1239*]; *Thomas* v. *Anderson, 6 C. E. Gr. 22; Cropley* v. *Cooper, 19 Wall. 167; McCall's Case, 11 Phila. 41; McClure's Appeal, 72 Pa. St. 414; Pleasonton's Appeal, 99 Pa. St. 362; 2 Jarm. on Wills* (*R. & T. ed.*) *466, *849; Potts* v. *Atherton, 28 L. J.* (*Ch.*) *486; Barker* v. *Barker, L. R.* (*16 Ch. Div.*) *44; Newberry* v. *Hinman, 49 Conn. 130; Stowell* v. *Graves, 2 T. & C.* (*N. Y.*) *211; Davidson* v. *Koehler, 76 Ind. 398; Burton* v. *Conigland, 82 N. C. 99.*

If property be given to A until B, an infant, arrives at the age of twenty-one, and then to B, and B dies under the age of twenty-one, in the lifetime of the testator, A has an estate therein until B would have been twenty-one if he had lived, *Coley* v. *Ballance, Winst.* (*N. C.*) *Eq. *43, 634.*—REP.

Cook *v.* Lanning.

my brother, George W. Lanning, and his wife, Eliza, and after their death the balance of my estate, if any, to [be] equally divided between Ralph Lanning, Sarah Elizabeth White, Rebecca Ann Winder, Theodore L. Jones [and] Abigail Buckalue."

Among the pecuniary legacies of particular sums before mentioned is one to Alfred Jones, of $150, with provision that the legatee's father is to have the interest thereof during his life. Alfred Jones died in the lifetime of the testator. The wife of George W. Lanning also died in the testator's lifetime. Among the legacies is one to Sarah, daughter of Elizabeth Waters. The legacies together amount, irrespective of the annuities, to $3,960. The personal estate, not including the promissory notes hereinbefore mentioned specifically bequeathed to John W. and William Lanning, amounts to $2,429.24. The debts already presented for payment amount to $1,063.50. Deducting that sum from the amount of the personal estate there is left a balance of $1,365.98, out of which are to come the expenses of administration. The testator owned other real estate besides the property specifically devised to Theodore L. Jones. Such other real estate is valued by witnesses at about $12,000 or $13,000. As has been seen, the personal property will fall far short of paying the legacies. The executors have not been able to discover any person answering the description of Sarah, daughter of Elizabeth Waters, but the testator had a great-great-niece named Sarah, who was the daughter of his great-niece, Elizabeth Wasson.

The executors seek directions as to their powers and duties. George W. Lanning (brother of the testator) insists that the testator died intestate of all his real estate except that which he specifically devised to Theodore L. Jones; or, if not of all of it, then of so much of it as will not be required for the payment of the legacies. Sarah E. White, Rebecca A. Winder and Ralph C. Lanning insist that the testator devised all of his real estate, and while they admit that the executors have power to sell land to pay the legacies, they insist that the executors have no power to sell any more than enough for that purpose.

The testator clearly intended to charge all the legacies upon his real estate not specifically devised. The evidence of such intention is found in the fact that after giving the legacies (which

are given generally) and making a devise of part of his real
estate, he makes a gift of *the balance of his estate.* Where lega-
cies are given generally, and the residue of the real and personal
estate is afterwards given in one mass, the legacies are a charge
upon the residuary real as well as the personal estate. *Hawk.*
*Wills 294; Corwine* v. *Corwine, 9 C. E. Gr. 579.* The execu-
tors, therefore, have power to sell land to pay the legacies.
*Dewey's Exr.* v. *Ruggles, 10 C. E. Gr. 35.* The testator did
not die intestate of any part of his estate. By the residuary
clause he gives all the "balance" of his "estate," after the death
of his brother and his brother's wife, to certain persons whom he
names. The term "estate" is the most comprehensive one that he
could have used. Standing without qualification, it includes all
of his property. *Welsh* v. *Crater, 5 Stew. Eq. 177; Roman*
*Cath. Ch.* v. *Wachter, 42 Barb. 43.* Nor is it in this case con-
fined by the context to the personal property. It is urged that
the words "if any" do so limit it. The argument is that the
testator must have known that he had disposed of only a part of
his real estate by the preceding provisions of the will, and hence
he must have known that there would be a surplus of his prop-
erty, estimating both real and personal together, after paying his
debts and the legacies, and therefore the use of the words "if
any," signifying doubt as to whether there would be any sur-
plus, shows that by the term "estate" he meant his personal
property only. But that consideration is not enough to warrant
such a construction. Opposed to it is the fact that the testator
had devised away a part of his real estate, and therefore must be
presumed to have had his real property in view when he used
the language of the residuary clause. To this is to be added the
very important consideration before mentioned that he employed
a term which included both kinds of property, and it must be
presumed that he used it understandingly.

The legacies other than the gifts to George are not to be paid,
and the division under the residuary clause is not to take place
until after the death of George. The testator intended that his
estate, except so much as should be required to satisfy the be-
quests in favor of George and his wife, should be accumulated.

by his executors until the death of both of those legatees. The payments and division are to be made by the executors. They should sell the whole of the real estate, except the part devised to Theodore L. Jones, and invest the proceeds with the balance of the personal property (if any) remaining after paying the debts and the expenses of settling the estate until George's death. Out of the income they are to pay him his annuity and the interest on the legacies to Stacy and James H. Lanning, and William H. Van Sant, the interest of which legacies is given to him for life by the will. After his death they are to pay the legacies which will be then payable, and make the division of the residue. Under the provisions of the will the executors have title to the real estate not specifically devised. *Zabriskie* v. *Morris and Essex R. R. Co., 6 Stew. Eq. 22.* They therefore should collect the rents up to the time of sale.

The legacy to Sarah, daughter of Elizabeth Waters, was undoubtedly intended for Sarah, daughter of Elizabeth Wasson.

The legacy to Alfred Jones lapsed by his death in the testator's lifetime. Its extinguishment by lapse extinguished, also, the claim of his father to interest thereon.